USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: SEP 3 0 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EXCEED HOLDINGS LLC *doing business as* EXCEED INVESTMENTS LLC,

Plaintiff,

v.

CHICAGO BOARD OPTIONS EXCHANGE INCORPORATED.,

Defendant.

No. 17-CV-8078 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Exceed Holdings, LLC ("Exceed") brings this action against Defendant Chicago Board Options Exchange, Inc. ("CBOE"), alleging promissory estoppel, fraudulent inducement, breach of contract, and misappropriation of trade secrets under both New York and federal law. CBOE now moves for dismissal pursuant to Rule 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND[1]

Exceed is a Delaware limited-liability corporation that creates and markets financial products, including structured notes. FAC ¶ 5, 15. A structured note "is generally defined as a bank-issued, senior, unsecured note with an embedded derivative component." *Id.* ¶ 12. The market for structured notes began in the late 1980s and today there are "hundreds of billions of notional issued annually." *Id.* The supply-side market for structured notes is relatively

---

[1] The following facts are drawn from the First Amended Complaint ("FAC"), ECF No. 1, and documents attached thereto. *See Solar v. Annetts*, 707 F. Supp. 2d 437, 440 (S.D.N.Y. 2010) (citation omitted). All factual allegations are assumed to be true and construed in the light most favorable to Exceed. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

1

concentrated due to "the product's high level of complexity and specialized nature." *Id.* ¶ 14. Accordingly, Exceed's competitor, VEST, is one of the other "few entrepreneurs [that] have attempted to take on [the large institutions that dominate this market]." *Id.* ¶¶ 14–15.

In early 2015, CBOE sought to learn more about Exceed to inform a potential investment intended "to gain a foothold in the marketplace for structured note products." *Id.* ¶ 16. To facilitate this, the parties entered into a non-disclosure agreement ("NDA"), which encompassed all information relevant to the potential investment. *Id.* ¶ 17–18, Ex. A. The NDA explicitly specified that the parties were not required to enter into any further agreements or assume additional obligations. *Id.* Ex A. at ¶ 9, 10.[2] Exceed then provided CBOE with "broad access to its internal, proprietary information, including plans for future structured note products." *Id.* ¶ 22. Exceed alleges that the information disclosed included:

- Presentations detailing Exceed's upcoming product launches;[3]

---

[2] Specifically, the NDA, which is appended to the FAC, provided:

9.    No Required Disclosure or Further Obligation. . . . Neither party shall be under any obligation of any    kind whatsoever to enter into any further agreement with the other party by reason of this Agreement.
. . .
10.    General. . . . The parties hereto agree that this Agreement is for the purposes of protecting the Confidential Information only. This Agreement is not a joint venture or other such business arrangement; and any agreement between the parties as to any existing or future business activities is or will be set forth in other or subsequent written agreements, respectively. . . . Each party acknowledges that the other party and its affiliates have been, are, and will be involved with their own development efforts with respect to financial trading systems, financial products and other systems and methodologies of the types that may be disclosed pursuant to this Agreement, and that nothing in this Agreement will be construed as a representation or implication that either party and its affiliates will not be, by themselves or with others, developing financial trading systems, financial products and other systems and methodologies for themselves or others that may be substantially similar to the financial trading systems, financial products and other systems and methodologies of the other party and its affiliates.

Am. Compl. Ex. A ¶ 9, 10

[3] Exceed alleges that this information included "expected fund launch progression and timing" which would be "extremely valuable to anyone seeking to launch competing products, and extremely damaging to Exceed." *Id.* ¶ 23.

2

- Worksheets supporting and detailing rebalancing of indexes;[4]
- Worksheets detailing fixed income holdings; and
- Exceed's detailed financial information.

*Id.* ¶ 23.

Meanwhile, in late 2015, Exceed allegedly learned for the first time that "CBOE was in talks to acquire an undisclosed entity in the option strategy space." *Id.* ¶ 25. When Exceed inquired about this investment in a potential competitor, CBOE assured Exceed "that the potential transaction was unrelated to the work Exceed was doing or the plans Exceed and CBOE were discussing." *Id.* ¶ 26. On January 26, 2016, two officers of CBOE "told [Exceed] point blank that the deal they're working on now is not at all mutually exclusive—but rather complementary—to [the contemplated deal between Exceed and CBOE]." *Id.* ¶ 26–27.

On January 25, 2016, CBOE announced its investment in VEST, the undisclosed entity, and one of Exceed's competitors. *Id.* ¶ 28. That day, CBOE's Senior Vice President of Business Development allegedly told Exceed that it "was next in the deal pipeline with CBOE, telling Exceed 'you're next.'" *Id.* ¶ 30. The following day, an Exceed official met with CBOE's Chief Strategy Officer to "discuss[] the next steps in their potential deal process." *Id.* These meetings culminated with "an in-person meeting in Chicago involving the transaction lawyer, Exceed's bankers, an advisor to Exceed and a number of staff to the CBOE in attendance." *Id.* ¶ 31. Exceed alleges that through the first-half of 2016, CBOE reassured Exceed that a deal "would be forthcoming," "the deal documents were already prepared," and that "they were just awaiting approval" from senior management at CBOE. *Id.* ¶ 32.

---

[4] "Rebalancing" refers to "making changes to the portfolio during execution of the strategy." Another process Exceed uses, "laddering," refers to a process of "purchasing options above and below a certain price point as a hedge." *Id.*

3

During the period CBOE made these statements, "VEST built and launched a new structured note project." *Id.* ¶ 34. VEST launched two indices—in April 2016 and July 2016—which allowed for laddering and rebalancing structured note strategies. *Id.* ¶ 36–37. Exceed alleges that the structure of both VEST indexes "closely match[es]" the structure of two note products Exceed was developing during the period covered by the NDA, and that CBOE had access to information concerning Exceed's "upcoming product launches." *Id.* ¶ 35–38. Exceed had not publicly announced these products. *Id.* ¶ 35. Then in August 2016 and January 2017, VEST launched mutual funds based on each index. *Id.* ¶ 38–39. Exceed alleges that each VEST product was based on information that Exceed "had disclosed to CBOE in confidence in its plan to launch [similar indices]." *Id.* ¶ 38. Furthermore, Exceed claims that, at the time of CBOE's investment in VEST, "Exceed did not understand VEST to have any active funds or indices" and was "unaware of any prior plans VEST had to launch such . . . mutual fund[s]." *Id.* ¶ 29, 43. On March 28, 2017, counsel for CBOE wrote to Exceed, claiming that CBOE had not disclosed any proprietary information gained from Exceed to VEST, and that "[VEST] already had developed the methodology for [the indices and mutual fund] products on its own before entering into discussion with CBOE." *Id.* ¶ 44, Ex. D.

## PROCEDURAL HISTORY

Exceed commenced this action on October 19, 2017. ECF No. 1. CBOE moved to dismiss, at which point the Court granted leave to amend. ECF No. 12. CBOE now moves to dismiss the operative Amended Complaint. ECF No. 23.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

4

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Although the Court must accept as true all non-conclusory factual allegations and draw all reasonable inferences in Plaintiff's favor, *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), it need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Promissory Estoppel

Exceed's claim for promissory estoppel must be dismissed. Under New York law, the elements of promissory estoppel are (1) "a clear and unambiguous promise," (2) "a reasonable and foreseeable reliance by the party to whom the promise is made," and (3) "injury sustained by the party asserting the estoppel by reason of his reliance." *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 448 (S.D.N.Y. 2003). "A promise that is too vague or too indefinite is not actionable." *See Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11-CV-6345 (RJS), 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012) (citation omitted).

As a quasi-contract claim, promissory estoppel liability cannot lie where a valid contract governs the dispute. *See Ashlock v. Slone*, 10-CV-453 (PAE), 2012 WL 3055775, at *6 (S.D.N.Y. July 26, 2012). As a result, Exceed focuses this particular claim on conduct after the NDA was executed and which is purportedly unrelated to the sharing of Exceed's proprietary information. Specifically, Exceed alleges that CBOE continued in a pattern of false representations "to make

5

sure that Exceed continued to trust CBOE" and "continued to feed CBOE the confidential and proprietary information CBOE was in turn feeding to VEST." FAC ¶ 59. CBOE accomplished this result, in Exceed's view, primarily by virtue of two promises after the investment in VEST: that an investment in Exceed would be "complementary" and that Exceed was "next" in the investment pipeline. CBOE also repeatedly promised that "deal documents would be forthcoming." FAC ¶ 32.

Even assuming that the existence of the NDA is not fatal to this cause of action, Exceed's claim fails. In particular, it has not plausibly alleged a clear and definite promise. With respect to the "complementary" statement, Exceed misconstrues its meaning. The statement was that an investment in Exceed would be "complementary" to the consummated investment in VEST. FAC ¶ 27. In its moving papers, however, Exceed portrays the statement as indicating that its products are "complementary" rather than "competitive" to those of VEST, thereby rendering it false because VEST and Exceed indisputably occupy similar market space. But it does not follow from this fact that *investments* in both companies could not be complementary, in CBOE's view, by for instance producing beneficial synergies.

More fundamentally, all of these statements constitute only representations of CBOE's continuing commitment to its inquiry regarding a *potential* investment in Exceed. It is well-established that a mere willingness to execute a contract or enter into a transaction is insufficient to make out a claim for promissory estoppel. *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 448–49 (S.D.N.Y. 2006) ("would be willing" to invest insufficient to support claim for promissory estoppel); *Lotes Co. v. Hon Hai Precision Inds. Co.*, 154 A.D.3d 579, 580 (N.Y. App. Div. 2017) (a mere "willingness" to license product does not qualify as a "clear and unambiguous" promise under New York law); *cf. Esquire Radio & Electronics, Inc. v.*

*Montgomery Ward & Co.*, 804 F.2d 787, 791–93 (S.D.N.Y. 1986) ("we will buy the parts" and "we are going to buy them anyway" in reference to long-standing contractual agreement by which plaintiff imported and stored spare parts for the ultimate purchase by defendant constituted clear and unambiguous promises). Even if the statements that Exceed was "next" or that the deal documents were being finalized somehow constituted definite promises to complete a deal, they would still be too vague and ambiguous due to the absence of any definite terms of such a transaction. *See Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015) (no claim for promissory estoppel where defendant's statements related to loan modification, which varies on a case-by-case basis, and plaintiff did not receive the terms of the alleged promised modification). Indeed, some of these statements were even accompanied by explicit acknowledgements that senior management at VEST had not approved of the contemplated transaction. *See* FAC ¶ 32.

Even assuming, *arguendo*, that CBOE's oral promises were adequately clear and unambiguous, Exceed's claim is fatally flawed because it has not plausibly alleged reasonable reliance. The NDA, which constituted the only contract between the parties and preceded the representations on which Exceed bases this particular claim, disavowed the notion that an investment was guaranteed. Indeed, the NDA unambiguously states that, "[n]either party shall be under any obligation of any kind whatsoever to enter into any further agreement with the other party." FAC Ex. A ¶ 9. Moreover, any reliance here was rendered further unreasonable by the NDA's integration clause, which expressly precluded oral modification. *Id.* Ex. A ¶ 10 ("This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements or understandings. This agreement shall not be modified except in writing signed by both parties."). It is well-established that reliance in such a scenario

7

is unreasonable. *See Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 523–24 (S.D.N.Y. 2009) ("[Plaintiff] cannot have reasonably relied on the alleged oral promises that comprise its promissory estoppel claim, because the agreement between the parties contained an unambiguous no-oral-modification clause."); *Kleinberg v. Radian Grp., Inc.*, 240 F. Supp. 2d 260, 262 (S.D.N.Y. 2002); *Stonier v. Digital Equip. Corp.*, 198 F.3d 234 (2d Cir. 1999) ("Any claimed reliance on oral promises was unreasonable as a matter of law given the existence of a clear contract.").[5]

## II. Fraudulent Inducement

Exceed also maintains a claim for fraudulent inducement. "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). In addition, allegations of fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citation omitted); *accord* Fed. R. Civ. P. 9(b).

Exceed appears to assert two theories of fraudulent inducement. First, it claims that CBOE induced Exceed to enter into the NDA. *See* FAC ¶ 49–50. Second, Exceed claims that CBOE induced Exceed to "continue to work with CBOE" by continually promising an investment and

---

[5] Exceed's reliance on the *Spencer Thrask* case for the proposition that "reasonable reliance is largely an issue of fact" is misplaced. *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 452 (S.D.N.Y. 2003). Indeed, under New York law, courts may determine, "as a matter of law that a party's reliance [is] unreasonable where the alleged misrepresentation is explicitly contradicted by the written agreement." *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008).

discouraging Exceed from seeking an investment elsewhere, so that CBOE could delay Exceed's product launch until VEST was able to compete. *See id.* ¶ 51. In this course of conduct, Exceed alleges that CBOE made several material misrepresentations of fact, primarily by "express[ing] interest in learning more about Exceed with the potential goal of investing" and the aforementioned statements about the "complementary" nature of an investment in Exceed and that it was "next." *Id.* ¶ 48, 51.

Exceed's claim of fraudulent inducement must be dismissed because it has not plausibly alleged the existence of any material misrepresentations or omissions on which it reasonably relied. While Exceed makes conclusory assertions that CBOE never intended to complete the contemplated investment, the Complaint is bereft of factual allegations. The only facts alleged in support are that after making the foregoing remarks, no investment was ultimately completed. "Allegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *Wall v. CSX Transp.*, Inc., 471 F.3d 410, 416 (2d Cir. 2006). Indeed, "[i]t is a general rule that a claim of intentional misrepresentation 'cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct,' because '[m]ere unfulfilled promissory statements as to what will be done in the future are not actionable.'" *Philips Credit Corp. v. Regent Health Grp., Inc.*, 953 F. Supp. 482, 520 (S.D.N.Y. 1997) (quoting *Brown v. Lockwood*, 432 N.Y.S.2d 186, 194 (N.Y. App. Div. 1980)).

Furthermore, with respect to the purported misstatements occurring after the execution of the NDA, much of the Court's reasoning concerning Exceed's promissory estoppel claim is similarly applicable. For instance, as for the "complementary" statement, there is not a single factual allegation tending to show that CBOE did not in fact view an investment in Exceed as

9

complementary to the one completed in VEST. Moreover, any reliance on these statements would be unreasonable in light of certain clauses in the NDA, namely that no investment was guaranteed and that oral modification was precluded. Accordingly, this claim is also dismissed.[6]

### III. Breach of Contract

Exceed further alleges that CBOE breached the NDA by disclosing proprietary information to VEST. "To state a claim for breach of contract, New York law requires that a plaintiff allege: (1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." *Texas Liquids Holdings, LLC v. Key Bank Nat. Ass'n*, No. 05-CV-5070 (KMW), 2007 WL 950136, at *2 (S.D.N.Y. Mar. 27, 2007).

Exceed's claim fails because it has not plausibly alleged that CBOE disclosed any proprietary information to VEST. Here again its claim is predicated on conclusory allegations and conjecture. Exceed has no direct allegations of any such disclosure by CBOE. It instead relies on the assumption that VEST could not have launched its products without receiving Exceed's proprietary information. Exceed's allegations, however, are insufficient to "nudge [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. As was the case in *Twombly*, Exceed's claim fails because while its allegations are "consistent" with a scenario in which CBOE violated the NDA, they do not "plausibly suggest[]" that is what in fact occurred. *See id.* at 557–58. In particular, other than identifying the information Exceed shared with CBOE

---

[6] Exceed's claim similarly fails because it has not plausibly alleged an injury in connection with CBOE's purported misrepresentations. Although it is possible that, absent CBOE's "reassurances" Exceed would have launched its own structured note products before VEST, the Complaint is barren of facts alleging that Exceed could have secured another investor, that such investor could have brought Exceed's products to market on a comparable timeline, or that Exceed had the capacity to launch its products individually on its own. *See Druck Corp. v. Macro Fund Ltd.*, 290 F. App'x 441, 445 (2d Cir. 2008). Likewise, Exceed has failed to plausibly allege any way in which VEST's launch impacted the value of Exceed products. The new information that Exceed included in its opposition papers ironically serves to support this conclusion by highlighting the various differences between the two companies' products. *See* P.'s Mem. Opp. (ECF No. 25) at 7.

10

pursuant to the NDA, it does not identify what proprietary information was used by VEST and precisely *how* the VEST products were similar to Exceed's.

The Complaint notes, for instance, that "the structure of VEST 1 closely matched that of Exceed 2," with no elaboration or further detail. FAC ¶ 36; *accord id.* ¶ 38 (alleging that there were "material similarities" between the VEST and Exceed products); *id.* ¶ 39 (VEST launched a product "based on the VEST 2 index, once again following the plans Exceed had laid out in confidence"). The closest Exceed comes to stating a valid claim is specifying that one of the VEST indexes "allowed for laddering and rebalancing structured note strategies." *Id.* ¶ 36. But Exceed elsewhere acknowledges its "general laddering and rebalancing methodology had been made public" while asserting in conclusory fashion that such information was "was not enough to duplicate Exceed's indexes or recreate their success." *Id.* ¶ 23(b). It is simply insufficient to allege that VEST's products utilized general strategies that are publicly available without providing any explanation as to what aspects of Exceed's proprietary information were incorporated. On these allegations, the Court cannot infer that the VEST products were made possible by virtue of the unauthorized sharing of Exceed's proprietary information.[7]

## IV. Misappropriation of Trade Secrets

Exceed's final two claims are for misappropriation of trade secrets pursuant to both New York and federal law. "To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117

---

[7] This problem is compounded by the fact that, as previously noted, while Exceed alleges that the VEST products "closely matched" Exceed's own products, it highlights in its opposition papers the ways in which the VEST products are substantially different. *See* P's Mem. Opp. at 7 (different laddering structures); *id* (different strategy for "capturing yield"); *id* at 7, n.4 (different use of fixed-income components).

11

(2d Cir. 2009). To maintain a claim under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*, "a party must show 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, for, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Elsevier Inc. v. Doctor Evidence*, LLC, No. 17-CV-5540 (KBF), 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23, 2018) (citing 18 U.S.C. § 1839(3)).

Both of these causes of action fail for the same reason as Exceed's breach of contract claim: the complete absence of factual allegations tending to show that CBOE disclosed any of Exceed's proprietary information. As the Court has explained in great detail, the only allegations are conclusory ones that VEST's products are similar to Exceed's, without any elaboration or explanation that would permit the Court to reasonably infer that the similarities were the result of the misappropriation. This is simply inadequate to withstand a motion to dismiss.

## CONCLUSION

For the foregoing reasons, CBOE's motion to dismiss is granted. In its opposition papers, Exceed appears to request further leave to amend, which is denied. None of the additional information offered by Exceed would remedy the defects fatal to its claims and accordingly any amendment would be futile. *See Singh v. NYC Dist. Council of Carpenters Benefit Funds*, No. 17-CV-7159 (VSB), 2018 WL 4335511, at *4 (S.D.N.Y. Sept. 11, 2018). The Clerk of Court is respectfully directed to terminate the motion pending at docket entries twelve and twenty-three,

12

and to close the case.

SO ORDERED.

Dated: September 30, 2018
New York, New York

_____
Ronnie Abrams
United States District Judge